# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRIDAY & COX, LLC, ) | |
| ) | |
| Plaintiff, ) | Civ. Action No. 18-532 |
| ) | |
| vs. ) | |
| ) | |
| FINDLAW, REUTERS HOLDINGS, INC., ) | |
| *and* WEST PUBLISHING ) | |
| CORPORATION *trading and doing* ) | |
| *business as* FINDLAW, ) | |
| ) | |
| Defendants, ) | |

## **OPINION**

**CONTI, Chief District Judge.**

### I.      Introduction

Pending before the court is a motion to dismiss, pursuant to Federal Rules of Civil Procedure Rule 12(b)(3) and Rule 12(b)(6), or, in the alternative, to transfer to the United States District Court for the District of Minnesota ("District of Minnesota"), pursuant to 28 U.S.C. § 1404(a) and § 1406(a) ("motion to transfer"). (ECF No. 5). Defendants FindLaw ("FindLaw"), Reuters Holdings, Inc. ("Reuters"), and West Publishing Corporation ("West" and collectively with FindLaw and Reuters, "defendants") seek to dismiss or transfer the complaint filed against them by plaintiff Friday & Cox, LLC ("plaintiff"). Defendants rely upon a forum-selection clause contained in a series of contracts West entered into with plaintiff. Plaintiff argues that the forum-selection clause should not be enforced because defendants materially breached the contracts containing the forum selection clause. (ECF No. 12 at 3.) For the reasons explained in this opinion and set forth on the record at the hearing

held on June 27, 2018, defendants' motion to transfer will be granted, and this case will be forthwith transferred to the District of Minnesota.

II.  **Background**

   A. **Procedural Background**

On March 28, 2018, plaintiff filed a complaint against defendants in the Court of Common Pleas of Allegheny County. Plaintiff in the complaint set forth the following claims:

- counts I and II—breach of contract;
- count III—fraud;
- count IV—violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. § 201-1-201.9-3; and
- count V—breach of warranty.

(ECF No. 1-1.) On April 25, 2018, defendants removed the case to this court pursuant to 28 U.S.C. § 1332. (ECF No. 1 ¶ 6.) On May 2, 2018, defendants filed the motion to transfer. (ECF No. 5.) Defendants attached to their motion a declaration by Jon J. Olson ("Olson") and three additional exhibits. (ECF No. 5-1.) On the same day, defendants filed a brief in support of their motion. (ECF No. 6.) On May 23, 2018, plaintiff filed a response in opposition to defendants' motion. (ECF No. 10.) On May 24, 2018, plaintiff filed a brief in support of its response in opposition. (ECF No. 12.)

On June 27, 2018, the court held a hearing with respect to the motion to transfer. The court on the record set forth its preliminary assessment. The court, however, held its decision in abeyance until after the parties completed mediation. On July 31, 2018, the court was informed that the parties did not settle the case at mediation. (ECF No. 18.) This opinion sets

forth the court's rationale for granting the motion to transfer and forthwith transferring the case to the District of Minnesota.

### B. Factual Background[1]

Plaintiff is a law firm in Pennsylvania, which operates a corporate website and corporate Facebook page in order to attract potential clients. (ECF No. 1-1 ¶¶ 1, 6.) FindLaw is a brand name for a website development and internet advertising component of West. (Id. ¶¶ 2, 3; ECF No. 5, ¶¶ 11, 12.) West is an affiliate of Reuters. (ECF No. 5-1 ¶ 4.) In 2010, plaintiff hired West to have FindLaw assist with, among other tasks intended to increase exposure to potential clients, advertising plaintiff's services, redesigning its website, and improving the search engine optimization of its website. (ECF No. 1-1 ¶¶ 9, 10; ECF No. 5-1 ¶ 6.) In subsequent years, plaintiff entered into several contracts with West for FindLaw's services, amounting to approximately $297,202.31 in payments made to West from plaintiff. (Id. ¶¶ 10, 11; ECF No. 5-1 ¶ 6.) The series of contracts between plaintiff and West was

---

[1] The court derives this factual background from the allegations of the complaint and the evidence defendants attached to their motion to transfer. The court's procedure for deciding the motion to transfer under § 1404(a) conforms to the procedure set forth by the Third Circuit Court of Appeals in In re U.S., 273 F.3d 380, 387 (3d Cir. 2001). The court of appeals explained:
> [T]here are certain minimum procedures that should be followed before ruling on a motion to transfer. It would appear evident that the party objecting to transfer must be given an opportunity to rebut the arguments and the evidence, if any, offered by the movant in favor of transfer. Also, it is helpful when the district court provides a statement of reasons for granting the motion to transfer so that the appellate court has a basis to determine whether the district court soundly exercised its discretion and considered the appropriate factors. See generally United States v. Criden, 648 F.2d 814, 819 (3d Cir.1981). It is not necessary that the transfer order be accompanied by a lengthy statement-such as the eight-page opinion in United States v. Coffee, 113 F.Supp.2d 751 (E.D.Pa.2000), describing the court's reasons for transferring a case-as long as there is a sufficient explanation of the factors considered, the weight accorded them, and the balancing performed.

In re U.S., 273 F.3d 380, 387 (3d Cir. 2001)

comprised of Order Forms submitted by plaintiff to West for its services. (ECF No. 5-1, Exs. 1-3.)

The Order Forms, which were executed by plaintiff in 2011, 2013, and 2017, incorporated the FindLaw Master Services Agreement ("FMSA") through an "Acknowledgement of Contract" provision. (ECF No. 5 ¶ 19.) The Acknowledgement of Contract provision is the same in all three Order Forms and provides:

> The Agreement (which includes all Order Forms, the FMSA, and any written Addenda or Amendments thereto) embodies the entire understanding between the parties with respect to the subject matter of the Agreement, and supersedes any and all prior understandings and agreements, oral or written, relating to the subject matter. If a conflict exists between the terms and conditions of the FMSA and this Order Form, then the terms and conditions of this Order Form shall control. Subscriber, by its authorized representative's signature below, acknowledges receipt of the FMSA (available at www.lawyermarketing.com/CM/servicesagreement.asp) and acknowledges its understanding and acceptance of the Agreement.

(ECF No. 5-1 at 6 (Ex. 1); id. at 11 (Ex. 2); id. at 22 (Ex. 3)).

The forum-selection clause at issue in this case is contained in the FMSA. (ECF No. 5-1 at 9 ¶ 14.4.) The initial forum-selection clause set forth in the FMSA, which was incorporated into the 2011 and 2013 Order Forms, provided:

> This Agreement is governed by and shall be construed under the laws of the State of Minnesota, without regard to conflict of law provisions. **The parties agree that the state and federal courts sitting in Minnesota will have exclusive jurisdiction over any claim arising out of this Agreement, and each party consents to the exclusive jurisdiction of such courts**. Each party further waives all defenses or objections to such jurisdiction and venue.

(Id. at 9, ¶ 14.4) (emphasis added).). The forum-selection clause set forth in the 2017 FMSA, which was incorporated into the 2017 Order Form provides:

> This Agreement is governed by the laws of the State of Minnesota, without regard to conflict of law rules that might direct the application of another jurisdiction's laws. **The parties agree that the state and federal courts sitting**

4

> **in Minnesota will have exclusive jurisdiction over any claim arising out of this Agreement, and each party consents to the exclusive jurisdiction of such courts**. Each party further waives all defenses or objections to such jurisdiction and venue. Any and all disputes, claims, and causes of action arising out of or relating to this Agreement shall be resolved individually, without resort to any form of class action.

(Id. at 24 ¶ 14) (emphasis added).)

### III. Discussion

#### A. Applicable Law

Defendants argue[2] that this case should be transferred to the District of Minnesota, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

---

[2]  Defendants also assert their motion under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406 and argue this case should be dismissed because venue is improper in this court. The Court in Atlantic Marine explained, however, that "a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3)[.]" Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 59 (2013). The Court explained that the proper method for enforcing a forum-selection clause was either a motion to transfer pursuant to 28 U.S.C. § 1404(a) or the application of the doctrine of forum non conveniens. Id. at 60. A motion to dismiss for forum non conveniens, however, is proper when "the alternative forum is a state court or the court of a foreign country, or situations in which there is no alternative federal forum to which the action could be transferred under the statute." Here, defendants request a transfer to another federal district court. The court will, therefore, address defendant's motion under § 1404(a) rather than Rule 12(b)(3), § 1406, or the doctrine of forum non conveniens. 5B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1352 (3d ed. 2014).

Defendants also argue for dismissal without prejudice under Rule 12(b)(6). (ECF No. 6 at 2.) The Supreme Court in Atlantic Marine left open the possibility that a party may be able to obtain dismissal of a case under Rule 12(b)(6) "if the plaintiff files suit in a district other than the one specified in a valid forum-selection clause[.]" Id. at 61. The Court, however, did not directly address or decide the issue. Because defendants in this case filed their motion under § 1404(a) and are entitled to relief under that section, the court need not determine whether defendants are also entitled to relief under Rule 12(b)(6).

28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). A transfer, however, "is not to be liberally granted." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). Defendants—as movants—bear the burden of establishing the need for transfer, and "'unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.'" Id. (quoting Owatonna Mfg. Co. v. Melroe Co., 301 F.Supp. 1296, 1307 (D. Minn. 1969)); Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

> A court considering a motion to transfer venue performs a two-part analysis. First, the court must decide whether the district to which the movant seeks to transfer the case has proper jurisdiction and venue, i.e., could the case have been brought in the transferee district in the first instance. Lawrence v. Xerox Corp., 56 F.Supp.2d 442, 450–451 (D.N.J.1999). Second, the court applies a number of public and private factors to determine which forum is most appropriate to consider the case. Id.

Centimark Corp. v. Jacobsen, Civ. Action No. 11-1137, 2011 WL 6000719, at *6 (W.D. Pa. Nov. 30, 2011).

The court of appeals in Jumara recognized that courts in analyzing whether transfer is appropriate under § 1404(a) have not limited their analyses to the "three enumerated factors in §1404(a)" and set forth a list of private and public interest factors that a court should consider to determine whether transfer is appropriate. Jumara, 55 F.3d at 879-80. The private interest factors include:

- the plaintiff's forum preference;
- the defendant's forum preference;

6

- whether the claim arose elsewhere;

- the convenience of the parties as indicated by their relative physical and financial condition;

- the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and

- the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879.

The public interest factors include:

- enforceability of the judgment;

- practical considerations that could make the trial easy, expeditious, or inexpensive;

- the relative administrative difficulty in the two fora resulting from court congestion;

- the local interest in deciding local controversies at home;

- the public polices of the fora; and

- the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80.

"The weighing of private and public interests under § 1404(a) changes, however, if a forum-selection clause enters the picture." In re: Howmedica Osteonics Corp., 867 F.3d 390, 402 (3d Cir. 2017). A forum-selection clause alters the court's analysis in three ways,[3] i.e., the district court:

---

3    The Court in Atlantic Marine explained:

The calculus changes…when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum."

7

(1) must give no weight to the forum preferred by "the party defying the forum-selection clause"; (2) must deem the private interests to "weigh entirely in favor of the preselected forum" because the parties agreed to the preselected forum and thereby waived the right to challenge it as inconvenient; and (3) must proceed to analyze only public interests.

Id. (quoting Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 63-64 (2013)). "[W]ith these modifications, to the typical § 1404(a) analysis, district courts should enforce valid forum-selection clauses '[i]n all but the most unusual cases.'" Id. (quoting Atl. Marine, 571 U.S. at 66).

### B. Analysis

#### 1. Whether the forum-selection clause is valid

Before determining if transfer is warranted under § 1404(a), the court must decide if the forum-selection clause is valid. The Third Circuit Court of Appeals has explained:

> In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law. Because "[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature," Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir.1991), federal law applies in diversity cases irrespective of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Jumara, 55 F.3d at 877. The Supreme Court has deemed forum-selection clauses "prima facie valid" and held that such clauses should be enforced unless enforcement against the resisting

---

Stewart, 487 U.S., at 31, 108 S.Ct. 2239. The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." Id., at 33, 108 S.Ct. 2239 (KENNEDY, J., concurring). For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Id., at 33, 108 S.Ct. 2239 (same).

Atl. Marine, 571 U.S. at 63.

party is shown to be "unreasonable" under the circumstances. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9 (1972). "[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist of Texas, 571 U.S. 49, 63 (2013) (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 33 (1988)).

Forum-selection clauses have thus been deemed presumptively valid, *unless* the objecting party can establish that the clause (1) is the result of "fraud, undue influence, or overweening bargaining power[,]" M/S Bremen, 407 U.S. at 13; (2) would contravene the public policy of the forum in which suit is brought, id. at 15; or (3) presents a forum that is "so gravely difficult and inconvenient" that it would essentially deprive the party resisting the clause of its day in court[,]" id. at 18. Each of these factors will be addressed below to determine whether the forum-selection clauses in issue are valid.

### a. Whether the forum-selection clause is the result of fraud or undue influence

The Third Circuit Court of Appeals has explained that a mere allegation of fraudulent conduct does not suspend operation of a forum-selection clause; rather, it requires an inquiry into whether the "clause is the result of 'fraud in the inducement of the [forum-selection] clause itself.'" MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A., 65 F. App'x 844, 847 (3d Cir. 2003) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–04 (1967)). Here, plaintiff's allegations of fraud against defendants concern defendants' representations to plaintiff about defendants' services prior to the parties entering into the FMSAs. (ECF No. 1-1 ¶ 25(a)—(e).) Plaintiff does not allege or otherwise show that defendants fraudulently induced it to enter into the forum-selection clauses.

### b. Whether the forum-selection clause violates public policy of either fora

Courts within Pennsylvania and Minnesota have upheld forum-selection clauses as being in compliance with public policy when they are freely entered into by the parties. See e.g., Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc., 320 N.W.2d 886, 889 (Minn. 1982) ("[P]ersuasive public policy reasons exist for enforcing a forum selection clause in a contract freely entered into by parties who have negotiated at arm's length."); Cent. Contracting Co. v. C. E. Youngdahl & Co., 209 A.2d 810, 816 (1965) (explaining that forum-selection clauses should be enforced as a matter of public policy "when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation"). Here, plaintiff did not argue or provide evidence to show that it did not freely agree to the forum-selection clauses at issue or any other basis on which the court could find the forum-selection clauses at issue in this case would violate public policy of Pennsylvania or Minnesota.

### c. Whether the enforcement of the forum-selection clause is so inconvenient as to deprive plaintiff of its day in court

The Supreme Court has held that the party claiming a forum is inconvenient bears a "heavy burden of proof." M/S Bremen, 407 at 17. The Third Circuit Court of Appeals has held that a forum selection is "unreasonable" if the party attempting to avoid the clause can make a strong showing that the party will "for all practical purposes be deprived of his day in court." Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1219 (3d Cir. 1991) (citing M/S Bremen, 407 U.S. at 18). Plaintiff in this case, however, explicitly states that it does not challenge Minnesota as an inconvenient forum. (Id. ("[Friday & Cox] is not challenging the preselected forum as inconvenient.").)

### d. Whether the forum-selection clause is rendered unenforceable because plaintiff alleges defendants materially breached their contract

Although plaintiff did not otherwise show that the forum-selection clauses in this case are invalid, it argues that the forum-selection clauses are unenforceable because defendants materially breached the FMSAs. (ECF No. 10 ¶¶ 2-3.) Other courts that have considered this issue, however, have held that a plaintiff's allegations that the defendant materially breached the contract containing the forum-selection clause do not render an otherwise enforceable forum-selection clause unenforceable. See e.g., Beaubois v. Accolade Constr. Grp., Inc., 15 Civ. 05302 (GBD), 2016 WL 94255, at *1 (S.D.N.Y. Jan. 7, 2016) (The court rejected the plaintiff's reliance on the principle "that a material breach discharges the non-breaching party from future performance" and explained that courts "routinely enforce forum-selection clauses against plaintiffs alleging breach of contract[.]"); CK DFW Partners LTD. v. City Kitchens, Inc., No. 3:06-CV-1598-D, 2007 WL 2381259, at *6 n.16 (N.D. Tex. Aug. 17, 2007); Nova Ribbon Prod., Inc. v. Lincoln Ribbon, Inc., No. CIV. A. 89-4340, 1992 WL 211544, at *1 (E.D. Pa. Aug. 24, 1992) ("The forum selection clause is a separate agreement, the validity of which is not a function of the validity of the agreement in which it was included. The party seeking to obviate the forum selection clause must prove that the inclusion of that particular clause in the contract was the product of fraud or coercion.")

In CK DFW, for example, the plaintiff sued the defendant for breach of contract, fraud, and violations of various federal statutes. Id. at *1. The contracts at issue in the case included forum-selection clauses that required disputes to be litigated in California. Id. The plaintiff argued that the defendant failed to satisfy mandatory mediation clauses, and, thus, was in material breach of the contracts, which excused the plaintiff from complying with the

contracts' forum-selection clauses. Id. at *5. The court rejected the plaintiff's argument and explained:

> If a material breach of a contract were deemed to excuse further performance of the contract's forum-selection clause, forum-selection clauses could essentially be rendered meaningless in actions for breach of contract. The determination of the forum in which the dispute is to be litigated would be inextricably linked to the merits of the case itself.

CK DFW, 2007 WL 2381259, at *6 n.16. The court—on that basis—enforced the forum-selection clause against the plaintiff. Id. at *9.

Here, the court is persuaded by the reasoning of the courts in the above-cited decisions. A forum-selection clause "is a separate agreement, the validity of which is not a function of the validity of the agreement in which it was included[.]" Nova Ribbon, 1992 WL 211544, at *1. Plaintiff—in order to prove that the forum-selection clause is unenforceable—must, therefore, show that the forum-selection clause is invalid, i.e., it is the result of fraud or undue influence, it violates public policy, or its enforcement would be so inconvenient that plaintiff would be deprived of its day in court. Plaintiff's reliance on its breach of contract allegations is not sufficient to show the forum-selection clause is invalid. As the court noted in CK DFW, if allegations of material breach invalidated forum-selection clauses, forum-selection clauses would never be enforceable and would be written out of agreements altogether. CK DFW, 2007 WL 2381259, at *6 n.16.

**e. Conclusion with respect to whether the forum-selection clause is valid**

Plaintiff did not carry its burden to show that any forum-selection clause is invalid, i.e., it was the result of fraud or undue influence, it violated public policy, or its enforcement is so inconvenient that it deprives plaintiff of its day in court. In other words, plaintiff did not show that enforcing the forum-selection clauses in this case is unreasonable. M/S Bremen,

407 U.S. at 9. The court must, therefore, utilize the § 1404(a) balancing test to determine whether to enforce the forum-selection clause and transfer this case to the District of Minnesota.

### 2. Application of the § 1404(a) Balancing Test

Because plaintiff and West entered into agreements with valid forum-selection clauses, the court will: (1) give no weight to plaintiff's choice of forum, i.e., this federal court in Pennsylvania, (2) deem the private interests to weigh entirely in favor of the preselected forum, i.e., the state and federal courts sitting in Minnesota; and (3) analyze only the public interests to determine whether transfer is warranted. Howmedics, 867 F.3d at 402.

Public interest factors considered when evaluating a motion to transfer pursuant to § 1404(a) "are not necessarily tied to the parties, but instead derive from 'the interest of justice.'" Howmedica, 867 F.3d at 402 (quoting 28 U.S.C. § 1404(a)). As stated above, public interest factors include: (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public polices of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Id. (citing Jumara, 55 F.3d at 879-80).

With respect to the first factor, there is no reason to believe that a judgment entered in Minnesota could not be enforced in Pennsylvania or elsewhere. This factor is neutral in the court's analysis.

The court is unaware of any practical considerations that could made the trial easier, more expeditious, or inexpensive in either jurisdiction. Witnesses and evidence are most

likely located in Pennsylvania *and* Minnesota because plaintiff is a resident of Pennsylvania and West and FindLaw are residents of Minnesota. This factor is, therefore, neutral.

With respect to court congestion, "'relative congestion of the respective courts' dockets is not a factor of great importance on a motion to transfer.'" Samuels v. Medytox Solutions, Inc., Civ. Action No. 13-7212, 2014 WL 4441943, at *10 (D.N.J. Sept. 8, 2014) (quoting Eastman v. First Data Corp., Civ. Action No. 10-4860, 2011 WL 1327707, at *5 (D.N.J. Apr.5, 2011)). This court has four active judges and six vacancies. CURRENT JUDICIAL VACANCIES, http://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last visited Aug. 8, 2018). The District of Minnesota has two vacancies, id., but its per judge caseload is greater. JUDICIAL EMERGENCIES, http://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies (last visited Aug. 8, 2018). This factor, therefore, weighs slightly in favor of denying the motion to transfer.

With respect to practical considerations that would make a trial easy or inexpensive, courts look to, among other things, whether there are "multiple lawsuits pending on the same subject matter and transfer would allow for consolidation of the cases before a single judge[,]" or "when there exist multiple suits concerning the same subject matter and involving the same parties." Samuels, 2014 WL 441943, at *10. Neither of those scenarios are implicated in this case. The court is not otherwise convinced that the trial would be easier or less expensive for the public in either forum. This factor is, therefore, neutral.

With respect to the local interest in deciding controversies at home, there is a local interest in deciding the controversy involving a Pennsylvania law firm in Pennsylvania. West and FindLaw, however, are residents of Minnesota. Minnesota, therefore, also has an interest

in deciding this controversy. This factor, therefore, is neutral in the court's analysis. IT Network Sols., LLC v. Kaseya U.S. Sales, LLC, No. CIV.A. 14-3455 FLW, 2015 WL 733710, at *6 (D.N.J. Feb. 20, 2015) (concluding this factor was neutral because the states in which each party was a resident had an interest in deciding the controversy).

With respect to the public policies of the fora, the court is unaware of any significant difference in the public policies of either forum that would weigh in favor or against this case being transferred to the District of Minnesota.

With respect to the familiarity of the trial judge with the applicable state law in this diversity case, this factor weighs slightly in favor of transfer. The undersigned federal judge or the federal judge receiving the case in the District of Minnesota are both equally capable of understanding and applying state law in a diversity case. IT Network, 2015 WL 733710, at *7 ("Further, California federal judges may be presumed to be sufficiently familiar with the applicable state laws here, as federal judges must grapple with the laws of other states in diversity cases quite frequently, weighing in favor of transfer."). As defendants suggest, however, a federal judge in Minnesota would have more experience applying Minnesota state law, which is the governing law of the FMSAs in this case. Radisson Hotels Int'l, Inc. v. Westin Hotel Co., 931 F. Supp. 638, 642 (D. Minn. 1996) ("While the federal court in Washington is fully capable of applying Minnesota law, on balance, this Court is more likely to be familiar with the applicable Minnesota law than the Washington Court.").

The Supreme Court has explained that public interest factors are rarely able to defeat a transfer motion, and, thus, the forum-selection clauses should control except in *unusual* cases. Atl. Marine Const., 571 U.S. at 64. Here, only one of the public interest factors weighs against transfer, i.e., the relative congestion of the courts. That factor, however, is balanced

against the familiarity of federal judges in Minnesota with Minnesota state law. The public interest factors, therefore, do not outweigh the private interest factors and the parties' choice of the state and federal courts in Minnesota as the fora for their disputes. Defendants' motion to transfer will be granted.

## IV. Conclusion

The forum-selection clause entered into between plaintiff and West is valid, and this case could have been filed in the District of Minnesota. Plaintiff did not show that the public interest in having the dispute heard in Pennsylvania outweighed its agreement to have its disputes with defendant heard in the state or federal courts of Minnesota. Defendants' motion to transfer (ECF No. 5) will be granted and this case forthwith transferred to the District of Minnesota. An appropriate order will be entered.

The Clerk shall mark this case closed.

BY THE COURT,

Dated: August 16, 2018

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United District Court Judge